YATES, Judge.
On May 17, 1993, W.C.C. and W.E.C. filed in the probate court a petition to adopt a minor child. Attached to their petition were consents to adoption, signed March 12, 1993, by the parents, G.D.M., the father, and L.M.M., the mother. On August 11, 1993, the probate court entered an interlocutory order granting custody of the child to W.C.C. and W.E.C., setting a dispositional hearing, and ordering a full post-placement investigation by the Department of Human Resources (“DHR”).
On October 29, 1993, the parents filed an objection to the adoption proceedings and moved to transfer the case from the probate court to the juvenile court, alleging, among other things, that when they signed the consent document they did not realize that they were consenting to adoption and, further, that the father is a “legal incompetent” and, therefore, that the document purporting to indicate his consent was invalid because it had not been signed by his guardian. Also on October 29, the parents filed in the juvenile court a petition for custody, alleging that they “did not nor have they ever knowingly consented to have their child adopted by [W.C.C. and W.E.C.].”
The case was transferred to the juvenile court, a guardian ad litem was appointed to represent the child, and a hearing was scheduled. On January 15, 1994, after a hearing, the juvenile court denied the parents’ petition for custody, finding that: (1) the minor child was a dependent; (2) the consent to adoption signed by the mother “constituted a valid, voluntary relinquishment of her parental rights and consent to the adoption”; and (3) the consent to adoption signed by the father was invalid because he is incompetent *1021 and that “his parental rights can be extinguished only by a judicial termination of parental rights proceeding.” The court further found that, pending a hearing, it was in the child’s best interests to remain in the legal custody of W.C.C. and W.E.C.
On March 11, 1994, after an ore tenus hearing, the juvenile court terminated the parental rights of G.D.M., granting legal guardianship and permanent custody of the child to W.C.C. and W.E.C., and giving them “full power to proceed with adoption plans.” G.D.M. appeals. He contends that the trial court (1) terminated his parental rights without clear and convincing evidence to support a termination; (2) failed to consider alternatives to termination; and (3) found the child dependent without sufficient evidence for such a finding.
The parents are residents of Tennessee. They divorced in December 1992; however, at the March 1994 hearing, they both testified that they were living together. We note that they have three other minor children, living in Tennessee, who are not subjects of this appeal. The maternal grandfather and his wife, who is the sister of G.D.M., were awarded legal custody of two of the children; another sister of G.D.M. and her husband were awarded legal custody of the other child. However, at the hearing, the parents both testified that they have physical custody of these three children.
The mother underwent a series of surgeries in 1992 and 1993. The father could not care for the children while the mother was hospitalized, because he suffers from paranoid schizophrenia caused by alcohol abuse. W.C.C. and W.E.C. received physical custody of the minor child at issue in September or October 1992. The mother testified that the child initially went to live with them while she recuperated from her surgeries. The arrangement was made by G.D.M.’s aunt. Since 1991, the father had spent 56 days in 4 different hospitals for rehabilitation. At the time of the hearing, he was under a doctor’s supervision and was taking prescribed medication. Because G.D.M. cannot manage his own affairs, his father has power of attorney.
The court, in terminating the parental rights of G.D.M., found:
“1. [The child] is a child under the age of eighteen years and is a resident or actually within Baldwin County.
“2. That said child is dependent within the meaning of Section 12-15-10 in that [G.D.M.] is not in a position to properly care for or rear the said child.
“3. The Court finds that the non-support and virtually total lack of contact between [G.D.M.] and his daughter ... constitutes abandonment of said child and is grounds for termination of parental rights.
“4. The Court further finds that the natural father ... suffers from a mental defect or mental disease to the extent that it renders him incapable of exercising the duties and responsibilities of a parent and is grounds for termination of parental rights.
“5. That the best interest of the child requires that ... the parental rights of [G.D.M.] to said child be terminated.
“6. That the child’s morals, health, and general welfare will be best served by granting [W.C.C. and W.E.C.] her permanent care, custody and control.
“7. That no alternative less drastic than termination of parental rights would be in the child’s best interest or appropriate in light of the circumstances in this case.”
The child’s best interests are the court’s paramount concern. “In determining the child’s best interests, the court must examine whether the parents are physically, financially, and mentally able to provide for the child.” J.L.B. v. State Department of Human Resources, 608 So.2d 1367, 1368 (Ala.Civ.App.1992). Ala.Code 1975, § 26-18-7(a), provides, “If the court finds from clear and convincing evidence, competent, material and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child ... it may terminate the parental rights of the parents.” The lower court determined that the father had, within the meaning of § 26-18-7(c), “abandoned” the minor. The father testified that he had never made contact with the child while she was in the care of W.C.C. and W.E.C. and had provided no financial *1022 support. The trial court found that the father’s mental defect renders him incapable of performing his parental duties.
When acting on a nonparent’s petition, the court must apply a two-pronged test before terminating the parent’s rights. First, the court must determine that the child is dependent. supra. Second, the court must find that there exists no viable alternative to termination of parental rights. Id. The ore tenus rule applies in cases involving termination of parental rights. When the evidence is presented ore tenus, the judgment of the trial court is “presumed correct and will be set aside only if the record reveals the judgment to be plainly and palpably wrong.” Id. at 1368.
Termination of parental rights is an extreme matter that is not considered lightly. Ex parte Beasley, 564 So.2d 950 (Ala.1990). This court, in K.M. v. Shelby County Dep’t of Hitman Resources, 628 So.2d 812 (Ala.Civ.App.1993), reversed the judgment oí the trial court terminating parental rights, because we were not satisfied that all viable alternatives to termination had been considered. Here, although the evidence regarding the father’s parenting abilities indicates that this may be a proper case for termination of his parental rights, it does not appear that the second prong of the test as to viable alternatives has been properly applied. The record contains no report from DHR, nor does it contain evidence indicating that any family member was considered as an alternative placement. Accordingly, we must reverse the judgment of the trial court and remand the cause for further proceedings, including the presentation of evidence regarding all viable alternatives.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.